Thompson, J.
delivered the opinion of the court. Tho •insurance brokers having become insolvent, and being indebted both to the plaintiffs and defendants, in a sum exceeding the amount now in question, a dead loss must’be •sustained either by the assured or by the underwriter. Both parties are, therefore, excusable in claiming the benefit of any strict principles of law, applicable to the case, that may operate in their favor. The determination of this question will depend on the relation in which the brokers may be considered as standing towards the respective parties. The agreement between the underwriters and brokers, as to the manner of transacting business, can no way affect the rights of the assured. The underwriters constitute the brokers their agents, to receive premiums; and the brokers agree, at the expiration of three months, to apply such premiums towards the payment of losses for which the underwriters become liable. The underwriters •may, therefore, be considered as looking to the brokers for the premiums. There does not, however, appear to be any general agreement, or understanding, between the brokers and assured, that tlie latter are to look to the former fox losses. Every case must, therefore, depend on its own circumstances. As a general rule, the underwriter, and not the broker, must be considered as debtor for the loss. The manner in which the brokers kept their accounts, was conformable to the agreement between them and the underwriters; hut this ought not to affect third persons. As between the brokers and the detendants, it may be considered as a payment of the loss by the latter to the former, but not as a payment to the assured, without their assent to such arrangement. No such assent appears — no evidence that the plaintiffs knew of the entry made in the broker’s books. But had they known it, we suppose it would not affect their claim against the defendants, unless they directly, *or impliedly, assented to look to the brokers, and not to the underwriters, for the loss. The policy being put into the hands of the brokers, authorized them to make the adjustment, and had it remained in their hands until the expiration of the thirty days, when, according to the terms of the adjustment, the loss was made payable, it might have been considered as an implied authority to receive the money. But the assured took the policy out of the hands of the brokers long before the expiration of the thirty days, and thereby revoked all the authority to receive payment which they might have been presumed to have had. The defendants cannot be presumed to have intended to make payment until the expiration of the thirty days. This entry was made in the broker’s books only four days after the 'adjustment; and so, cannot reasonably be considered, or' imagined, as a payment of this particular demand, but only for the purpose of keeping a general statement of accounts between the brokers and underwriters. We cannot discover any authority given by the plaintiffs to the brokers to receive payment of this loss, or any assent or agreement by the former to look to the latter for payment, and to discharge the underwriters from their liability. The opinion of the court therefore is, that the plaintiffs have judgment.
Livingston. J.
This is an attempt to recover from the underwriters, after a fair settlement, and what I deem equivalent to a payment by the insurance brokers, merely because the latter have since become insolvent.(a) The *145 policy was delivered for settlement by tlie plaintiffs tc Munro, one of the brokers who effected it. He tiras became their agent, and a receipt of the money by him would have discharged the underwriters. So, also, his other acts in relation to this business must be binding on'them. The first thing that Munroe does, is to obtain from the underwriters “an adjustment, payable in thirty days, which the brokers were requested to charge to their account, and to cancel the policy.” This was signed by the defendants on the 2d of January 1802. "We have no right to believe the plaintiff’s ignorant of the nature of this ad j ustment. Munro is dead, which renders proof of this fact difficult. But from their having been brokers themselves, and from the relation in which they stood to Mutuo in the transaction, it is a fair and natural *presumption, that they knew of this adjustment immediately. This knowledge would amount to but little short of a consent on their part to take the brokers as paymasters, if they were in funds, and willing to become so. It is admitted this was the case; for, only four days after, the bzx>-kers charged the defendants, who were their creditors, and credited the plaintiffs, who were their debtors, in their books, with the amount of this loss. This anticipation of payment might have been at the broker’s peril, but the plaintiffs had no right to complain. With this entry it is not certain the plaintiffs were acquainted, but being indebted to the brokers, they could not well object to it; and it is more than probable they were informed of it by the one who is since dead. I have chosen to consider this case without reference to any general agreement between brokers and underwriter’s, because I think there is sufficient evidence that the plaintiffs agreed to look to the broker, with *146 out any future recourse on the underwriters, and because having received payment by a credit with the brokers, whose debtors they were, it would be unjust to subject the defendants to any inconvenience on account of the subsequent bankruptcy of those gentlemen. I think, therefore, there should be judgment for the defendants.
Judgment for the plaintiffs.

 It lias been ruled that if an insurance broker, living at a distance from his principal, credit him for the amount of a loss on a policy, and receive from him the balance of his account, struck upon the allowance of such credit, the broker cannot, after a lapse of two years, recover from his principal the amount of subscriptions he has, from the subsequent insolvency of the underwriters, been unable to collect. Jameson v. Swainstone, 2 Camp. *145 546, n. So, if the broker himself pay the loss. Edgar v. Bumstead, 1 Camp. 411. where a broker retains a policy in his hands, lie is bound to uso reasonable diligence in procuring payment from the underwriters; if he do not, he is liable, in case of their insolvency. Bousfield v. Creswell, 2 Camp, 545.